THE STATE (BAIRD, prosecutor,) *vs.* BAIRD AND TORREY.†

1. The father is entitled to the custody of his children ; and in no case will the courts take them away from him when he has them in his custody, fairly obtained, except where the father, from notorious grossly immoral conduct or great impurity of life, with which his children come in contact

---

\* *Rev., p.* 945.    † CITED *in Landis* v. *Landis,* 10 *Vr.* 279.

The State, Baird, prosecutor, *v.* Baird and Torrey.

so as to be in danger of contamination, is an improper person to have the custody of his own children. Infants under seven years of age are an exception, under the act of March 20th, 1860 (*Pamph. L.* 437).

2. Upon a *habeas corpus* brought by the father for his children, the court will not, as a matter of course, order them to be delivered up to him, but only in case they are improperly restrained of their liberty. The office of the writ is not to recover the possession of the persons detained, but to free them from all illegal restraints upon their liberty.

3. If the infants are of sufficient years or discretion to judge for themselves, they will be examined, and if they are satisfied and wish to remain, the court will hold that they are not unduly deprived of their liberty, and will permit them to go with which of the parties they may elect. When they are too young to exercise any discretion, the court will determine for them, and adjudge the custody to such parent as may be considered most advantageous for the infants.

4. All the children were adjudged to remain in the custody of the mother; the two youngest, because under seven years of age, and the mother a fit person to have the custody of them ; the four eldest because, upon examination, they proved not to be restrained by their mother, those capable of making their election preferring to remain with her ; and in the case of those not so capable, because it was adjudged to be for their benefit and advantage to be brought up with the others.

---

*Mr. Carpenter* and *Mr. Browning,* for complainant.

*Mr. F. B. Chetwood* and *Mr. Williamson,* for defendants.

## THE CHANCELLOR.

A *habeas corpus* was sued out by the relator, James H. Baird, tested April 12th, 1864, to compel his wife, Adeline W. Baird, and her father, William Torrey, the defendants, to produce Adeline T. Baird, then in her thirteenth year, James H. Baird, then in his eleventh year, William T. Baird, then in his ninth year, Robert B. Baird, then in his seventh year, Edward P. Baird, then in his fifth year, and George D. Baird, then in his second year, the six children of said James H. Baird and Adeline W. Baird, his wife. The petition for the writ states that the first five named of said children were taken from the residence of the petitioner in the city of Philadelphia, without his knowledge or consent,

on the eleventh day of March, 1862, by his wife Adeline, and taken to the residence of her father in this state, and there detained and kept from him, his wife having deserted him without cause; and that the youngest of said children, whom he had never seen, and whose name was unknown to him, was born in this state after the desertion of his wife, who, as the petition alleges, deserted him at that time without cause, and refused to see him.

The return of William Torrey denies that he has the custody of, or detains said children, and states that they are in the custody and charge of their mother, at a dwelling-house in the county of Ocean; where she resides and keeps house by herself.

The defendant, Adeline W. Baird, in her answer and return, produces the six children as commanded by the writ, and shows, as the cause of their detention in her custody, that they are her children, and all of tender and helpless age and require the care and nurture of a mother, and that their father has not the means of maintaining them, and has not made the necessary provision for maintaining her or them for a large portion of her married life. She admits that she left her husband on the day stated in the petition, and took the five children with her, and that she and they have since been maintained by her father.

She adds to this return a detailed history of her married life, stating with great bitterness and acerbity, the particulars of the failure of her husband, who is a clergyman, in his efforts as a preacher and pastor, his unpopularity and dissensions with his congregations, and his great unkindness to her; and charges him with using personal violence to her on three occasions, and with impure conduct with lewd women and with her own female servants, by intrusion into their rooms when they were undressed.

The prosecutor, in his answer to this return, reviews and restates the history of their married life, denies the unkind treatment, explicitly denies the charges of personal violence and of impurity of conduct, and charges that the real cause

of her final separation from him was his detecting her in what he considers not only highly reprehensible, but criminal conduct, in co-operation with others. This conduct he declines to specify; but a summary of the charges against him gratuitously appended to the return of William Torrey, and the subsequent evidence in the court, shows that was a charge of attempting to effect abortion while *enceinte* with her youngest child, which her husband supposed she had attempted by the aid of Dr. J. S. Ludlow, her attending physician. He charged her with the attempt, and for it discharged Dr. Ludlow, and would not permit him to continue his attendance on his wife.

Pending these proceedings, the prosecutor, who resides in Pennsylvania, instituted proceedings in the courts of that state for a divorce; and in March, 1866, the divorce was granted.

A large mass of testimony has been taken on both sides to sustain their respective allegations, each endeavoring to show that the want of harmony and success that pervaded the greater portion of their married life was the fault of the other; she to maintain her charges of neglect, harshness, personal violence, impure life, and immoral conduct; he to show that his want of success was in a manner owing to her want of affection for, and co-operation with him, and to the continued interference of her parents; and that she and Dr. Ludlow were guilty of the attempt to produce abortion.

Much, by far the most, of this evidence has nothing to do with the question before me. And, therefore, before remarking on the evidence, it will be advisable to settle the principles of law on which this case must be determined.

The law that applies to this case, as to the right to the custody of infants, and the power and duty of courts and judges when infants are brought before them on *habeas corpus* to change their custody, is, I think, settled.

The father, at common law, is entitled to the custody of his children; and in no case will the courts take them away from him when he has them in his custody fairly obtained,

except where the father, from notorious grossly immoral character or great impurity of life, with which his children come in contact so as to be in danger of contamination, is an improper person to have the custody of his own children.

This is the law of this state, except as to infants under seven years of age, the custody of whom, by the act of March 20th, 1860, is given to the mother if she is not unfit for it, and the courts and judges are bound, on *habeas corpus,* to award it to her.

Upon a *habeas corpus* brought by the father for his chilren, the court will not, as a matter of course, order them to be delivered up to him, but only in case they are improperly restrained of their liberty. The office of the writ is not to recover the possession of the persons detained, but to free them from all illegal restraints upon their liberty. And therefore, in cases where infant children are not in the custody of improper persons, and are not restrained against their will, they will not, on *habeas corpus,* be delivered to their father. If the infants are of sufficient years or discretion to judge for themselves, they will be examined, and if they are satisfied and wish to remain, the court will hold that they are not unduly deprived of their liberty, and will permit them to go with which of the parties they may elect. When the infants are too young to exercise any discretion, the court will determine for them, and adjudge the custody to such of the parties as may be considered most advantageous to the infants. Such, it must be presumed, would be the choice of the infant had it the capacity to elect, but the custody would in all such cases be given to the father if not an improper person, unless it clearly appears that it is for the advantage of the infant to remain where found.

These principles may be fairly considered as settled by the numerous authorities on the subject, though in some of the applications of them there is conflict. *Forsyth on Custody of Infants* 54; *McPherson on Infants* 152; *Rex* v. *Smith, Strange* 982; *Rex* v. *Delaval,* 3 *Burr.* 1434; *Blissett's case, Lofft* 748; *State* v. *Cheeseman,* 2 *South.* 445; *State* v.

The State, Baird, prosecutor, *v.* Baird and Torrey.

*Stigall,* 2 *Zab.* 286 ; *Mayne* v. *Baldwin,* 1 *Halst. C. R.* 454 ; *Bennet* v. *Bennet,* 2 *Beasley* 114 ; *In re Wollstonecraft,* 4 *Johns. C. R.* 80 ; *In re McDowle,* 8 *Johns. R.* 328 ; *In re Waldron,* 13 *Johns. R.* 418 ; *The People* v. *Mercein,* 8 *Paige* 47 ; *Mercein* v. *The People,* 25 *Wend.* 64 ; *United States* v. *Green,* 3 *Mason* 482.

In the case of the *State* v. *Cheeseman,* 2 *South.* 445, the court holds that the relator, who was the guardian, was clearly entitled to the custody of the child, a boy between thirteen and fourteen years old, that the guardian had the right to *take* possession of him, and the mother had no right to resist, yet that, as he was not retrained against his will, the court could not, on a *habeas corpus,* the only office of which was to relieve from improper restraint, order him to be delivered to his guardian, and determined "to let the child go where he will."

There can be no doubt then, that the custody of the two younger children, who are under seven years of age, must be awarded to the mother by the express directions of the act of March 20th, 1860, (*Nix. Dig.* 361, § 18,*) unless she be of such character or habits as to render her an improper guardian for them.

There is nothing in the evidence to show that the character or habits of Mrs. Baird are such as to render her an improper guardian for her children. The prosecutor does not so contend. She is a woman of education, refinement, and religious life and principles. The prosecutor does not allege anything against her except her conduct to him in their married life, her attempt at producing abortion, and her untrue and unfounded charges against him. The attempt at abortion is strongly sustained by circumstantial evidence, such, as if not well and strongly answered, would be sufficient to produce conviction of the truth of the charge, but is explicitly denied by Mrs. Baird, and by Dr. Ludlow, a respectable physician, and I am unwilling to believe that they, or either of them, are capable of committing plain and direct perjury. And even were I compelled to the conclusion

---

\* *Rev., p.* 485, *sec.* 21.

that she had made the attempt, although the crime is a grave one, not to be justified or excused, I do not think it sufficient of itself to show that she is an improper guardian for her children. It is easy to conceive that a woman of a weak, nervous, and shattered physical frame, who has been enfeebled by years of discomfort, agitation, and misery, in her dread of undergoing again the first part of the curse on Eve, especially when it is not mitigated by the second part, affection for, and subjection to, her husband, may, without being totally demoralized, be tempted to try and avoid it by this crime. She may still be a kind, true, and affectionate mother to her children, and even more capable, and more likely to discharge her duties, than one more cold and phlegmatic, who could endure with stoical composure the protracted sufferings of gestation and parturition. And Mrs. Baird, by the aid given by her father, is able to bring up and educate these children properly, and with comfort. I can leave them in her charge, in full confidence that so long as she lives and remains in her present circumstances, they will be properly cared for and trained.

The father is, by law, entitled to the custody of the four other children, unless his character is such as to render him an improper guardian. For this purpose the charges and evidence relating to his moral character are relevant, and must be considered.

The principal charges against him are, that his conduct was immoral and impure with regard to women; that he was in the habit of conversing and walking with lewd women in the streets, and going to houses of ill-fame; that his conduct towards the female servants was indecent; that he was in the habit of intruding himself into their rooms at night when they were undressed. It is neither necessary nor proper that I should recapitulate the testimony on these charges. There is no testimony to sustain them, that can be considered as entitled to any credit. And this is not all; but these charges, considered in connection with the proofs on which they are based, and by which they are attempted to be sustained, do

no credit to Mrs. Baird; they are unworthy of her. They show a morbid aversion to her husband and the father of her children so intense as to overcome, as regards him, her sense of justice and propriety, which I do not doubt she possesses in a high degree, both by nature and education. The consideration of this matter is not gratuitous or uncalled for, because in exercising any discretion I may have with regard to the custody of these children, the fact that she may not be able to refrain from instilling into their minds a like aversion to their father, may be an important element for consideration.

The charges of personal violence to herself are next in importance, as they may show a cruel and brutal disposition, or ungovernable temper, that may make him an unfit custodian to rear children of tender years, when untempered by a mother's kindness. Three instances are specified in her charges, four in the proofs. They are substantially denied by Mr. Baird, in his answer and testimony. There is nothing in the case to affect his character for truth. On the contrary, he appears to be a man of high regard for right and duty. If these scenes had occurred in the manner stated, he must recollect them; his denial would be an untruth. Excited feelings may have led her to exaggerate, without meaning to violate the truth. I cannot believe that these matters occurred *in the manner* related by her, and in some of them the manner is the whole essence of the charge, as regards the object for which they are relevant to this question. I am forced to conclude that the feelings of Mrs. Baird have so controlled and perverted her recollection as to magnify trifles, or matters of little significance, into serious injuries. The question here is not whether, in these cases, there where technical, unjustifiable assaults. The law regarding the power of the husband over a wife has much changed since the age when the limitation most absurdly attributed to Lord Hale is said to have been laid down. No physical force or restraint would now be justified at law among any class, unless necessary for the safety of the wife, or the protection due to her from her husband. He may well restrain her from

striking her infant child with a deadly weapon, or from throwing herself from a window, by all the force necessary to effect the object; so might any stranger; but a husband would be bound by duty to do so. Whether placing his hand on her mouth to stop violent and excited language imprudently indulged in, or taking her from a room where she was, in his opinion, unwisely making excited denunciations that could not be recalled, by placing his arm around her waist or his hands against her shoulders, would in any case be considered justifiable at law, it is not necessary here to determine. But such things may be done under circumstances that would not, in this court, sustain a charge of extreme cruelty, or show ·that such husband was an unfit custodian of his children, and that even where the prudence or necessity of the interference should not be justified. I do not believe that more was done by Mr. Baird on these occasions, than might be excused on such grounds. And in stating that I do not believe these charges to the extent to which they are made by Mrs. Baird, I do not charge her with willfully making false accusations against him; but I am convinced that her feelings on this subject are so excited and intensified that, without intending it, her imagination affects her recollection of facts that really occurred. It evidently does to a great extent in her narration of the history of her married life, which I must consider for this purpose, if for no other in the cause.

Under the head of cruel treatment may be ranged the charge made against her, of attempting to produce abortion, which, if untruly made, without grounds of suspicion to warrant it, would be very cruel treatment. I have already given my views of the evidence by which this charge was supported. To say here that the facts would justify the suspicion, and the making of the charge made by him, would very inadequately express my opinion. Without contradiction by respectable witnesses under oath, (which Mr. Baird had not) the facts before him must have carried conviction. And even with that contradiction, a court of law would hardly set aside

a verdict founded on the evidence upon which he acted. There is nothing against him in this charge.

The other matters involved in the evidence, can have little or no effect on the determination of the question here. It is not necessary for me to determine which was in fault, or most to blame for the many difficulties and disagreements that for years attended their life, and ended in their separation and final divorce. The questions that arise in such investigation, so far as contained in the evidence, would have little to do with the determination of the question to be decided here, as to the fact whether either is an improper guardian for these children.

I am clearly of opinion, from the whole evidence, that there is nothing before me by which I can hold that either is not a fit and proper custodian of those children which the law commits to him or her. The children under seven must remain with the mother. If the children over that age were now in the custody of the father, I could not deprive him of it on *habeas corpus*.

But the four children above that age, upon an examination, have satisfied me that they are not restrained by their mother against their will, and that they desire to remain with her. So far as they are of capacity to make that declaration, upon the principles laid down as the law of the case, they cannot be taken from their mother upon *habeas corpus*, but must be allowed to go with her if they choose. As to those not capable of making that selection, the presumption is that they choose the custody which, all things considered, is most for their benefit. And which custody is most for their benefit must be determined by the court.

Mrs. Baird has an adequate support and a comfortable home furnished for herself and children by her father and friends, is a woman of education and intelligence, of refinement and feeling, and of unexceptional moral and religious character. She may have had a strong and even unjustifiable aversion to her husband, without affecting her character in these respects, or making her less competent to educate

her children; for differences in development and organization may render a life together, insufferable to two persons, without moral fault in either. And as the custody of the elder and younger children is with the mother, it is an advantage and benefit for the children to be educated and brought up together, that cannot be overlooked. I shall therefore determine that it is for the benefit of these children to remain with the mother. I will so determine upon a careful consideration of the whole case, including the possibility of their imbibing from her, her aversion to their father, which has given me more difficulty in doing so than any other matter.

This view makes it unnecessary for me to determine whether William is of sufficient age or capacity to choose for himself. There is no absolute rule on this subject; and at his age, twelve years, there might be a question. But if he is of sufficient capacity he has chosen, and if he is not, the court has determined his choice for him, in the same way.

Of course, in such case, the father must be allowed to visit his children at proper times, and under proper limitations. These, if not agreed on, will be fixed by the court. And this must be allowed on the condition that he shall not use these visits to deprive the mother of the custody of these children either by persuasion or force.*

---

* By the decree of the Court of Appeals, the two youngest children were adjudged to remain with their mother, and the eldest if she so desired; the other three children to be delivered into the custody of their father.—6 *C. E. Gr.* 384.

